# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RICHARD A. BLAZEVIC,

    *Plaintiff,*

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    *Defendant.*

Case No. 11-2589-EFM

## MEMORANDUM AND ORDER

Plaintiff Richard Blazevic seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act.[1] Plaintiff alleges that the Commissioner's decision must be reversed and the claim remanded because the ALJ failed to give proper weight to the testimony of Plaintiff's treating psychiatrist, erred in finding Plaintiff not credible, improperly assessed Plaintiff's residual functional capacity, and erred in relying upon testimony from the vocational expert. Because the Court finds that the Commissioner's decision was not supported by substantial evidence, the Court reverses and remands this case for further consideration.

---

[1] *See* 42 U.S.C. §§ 401 *et seq*.

## I. Factual and Procedural Background

Plaintiff was born on January 3, 1969, and he was forty-one years old when the ALJ issued his decision. Plaintiff has a high school education and he completed one year of college classes but did not receive a post-secondary degree. His work history includes several positions, including a gambling monitor, a gambling dealer, and a sales route driver. Plaintiff was not engaged in substantial gainful activity during the period of review.[2]

Plaintiff was involved in a motor vehicle accident on September 25, 2007. Following the collision, he developed neck pain and he felt pain and tingling in his right arm. On October 1, 2007, Plaintiff began seeing Terry A. Simmons, M.D., who diagnosed Plaintiff with a herniated disc with bilateral cervical radiculopathy and extreme anxiety. Adrian P. Jackson, M.D. also examined Plaintiff in October 2007 with respect to Plaintiff's neck and arm pain. Dr. Jackson also diagnosed Plaintiff with a right paracentral disc herniation. Plaintiff underwent anterior cervical discectomy and fusion surgery on December 13, 2007, the date on which Plaintiff claims he became disabled.

Beginning on September 15, 2008, Plaintiff began seeing Wade A. Hachinsky, D.O., for evaluation of his anxiety. After performing a mental status examination, Dr. Hachinsky diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") with a score of fifty on the Global Assessment of Functioning ("GAF") scale. Dr. Hachinsky prescribed Lexapro and Clonazepam and referred Plaintiff to Madison Avenue Psychological Services for counseling.

---

[2] Although Plaintiff continued working after his alleged disability onset date, the ALJ classified this work as unsuccessful work attempts of short duration that were not presumptive of substantial gainful activity. ALJ Decision, Doc. 4-4, at 11.

Plaintiff applied for disability benefits on September 5, 2008. The agency denied Plaintiff's application both initially and on reconsideration. Following a hearing, at which Plaintiff was represented by counsel, an administrative law judge ("ALJ") issued a decision on November 5, 2010. The ALJ found that Plaintiff was not under a "disability" as defined in the Social Security Act because he could perform other work. Plaintiff sought reconsideration of the ALJ's decision, which the Appeals Council denied on January 7, 2011. On August 26, 2011, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[4] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[5] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by

---

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

substantial evidence.[6] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[7]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[8] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[9] The claimant bears the burden during the first four steps.[10] In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and he has a medically severe impairment or combination of impairments.[11]

"At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."[12] If, however, the claimant does not establish an impairment at step three, the process continues. The ALJ assesses the claimant's residual functioning capacity ("RFC"), and at step four, the claimant must demonstrate that his impairment prevents him from performing his past work.[13] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national

---

[6] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[7] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citations omitted).

[8] 42 U.S.C. § 1382c(3)(A); *see also Id.* § 423(d)(1)(A).

[9] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[10] *Lax*, 489 F.3d at 1084.

[11] *Id.* (citations omitted).

[12] *Id.*

[13] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

economy within the claimant's RFC.[14] The RFC assessment is used to evaluate the claim at both step four and step five.[15]

### III. Analysis

Plaintiff argues that the ALJ erred in finding Plaintiff's testimony not credible, giving little weight to the testimony of Plaintiff's treating psychiatrist, assessing Plaintiff's RFC, and relying upon testimony from the vocational expert. The Court will address each of Plaintiff's arguments in turn.

**A. The ALJ Improperly Weighed Dr. Hachinsky's Treating Source Opinion**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of his treating psychiatrist, Dr. Hachinsky. Under the regulations, the agency rulings, and our case law, an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion.[16] An ALJ should "[g]enerally . . . give more weight to opinions from [claimant's] treating sources."[17]

When reviewing the medical opinion of a treating physician, an ALJ must engage in a two-step inquiry. First, the ALJ must decide whether to afford the opinion controlling weight. Second, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the

---

[14] *Id.*; 20 C.F.R. § 416.920(a)(4)(v).

[15] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

[16] 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling 96–2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[17] 20 C.F.R. § 404.1527(d)(2).

cited regulations for this particular purpose, for the weight assigned."[18] The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[19]

Under the "treating physician rule," the Commissioner will generally give greater weight to the opinions of those who have treated the claimant than of those who have not.[20] If a treating source's opinion regarding the nature and severity of impairment is well-supported and is not inconsistent with the other substantial evidence in claimant's case record, the ALJ will give it controlling weight.[21] Although the testimony of a treating specialist is generally significant, the weight of such testimony depends upon whether it is well-supported and consistent with the record as a whole.[22]

Plaintiff first challenges the ALJ's finding that the medical evidence did not support Dr. Hachinsky's assignment of a GAF score of fifty. Under the diagnostic criteria from DSM-IV, individuals with such a score exhibit "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational or

---

[18] *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (internal citation omitted).

[19] *Id.* at 1331.

[20] *Hackett*, 395 F.3d at 1173-74.

[21] 20 C.F.R. § 404.1527(c)(2).

[22] *See* 20 C.F.R. § 404.1527(c)(3) & (4).

school functioning."[23] The ALJ's decision reviewed the record for evidence of serious symptoms but did not consider the disjunctive option, serious impairment in social or occupational functioning. As Plaintiff points out, Dr. Hachinsky reported serious concerns regarding Plaintiff's ability to function in social and occupational settings. For this reason, the ALJ improperly analyzed the GAF score that Dr. Hachinsky assigned.

Second, Plaintiff argues that the ALJ failed to affirmatively seek resolution of a perceived inconsistency in Dr. Hachinsky's reports. Dr. Hachinsky submitted two medical opinion reports, both dated August 30, 2010. The first report concluded that Plaintiff's mental limitations ranged from mild to moderate and that he had no limitations that were marked or extreme. The second report noted that Plaintiff had mental abilities that were limited but satisfactory, but ultimately opined that Plaintiff was unable to meet competitive standards in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. This second opinion estimated that Plaintiff could miss more than four days of work per month due to his mental condition.

The ALJ concluded that these reports were inconsistent with one another, thereby limiting their evidentiary force. Plaintiff now argues that the ALJ was obligated to contact Dr. Hachinsky to develop the record in an attempt to reconcile the apparent inconsistency. Despite the Commissioner's argument that the duty to contact arises only upon insufficient evidence, the regulations provide that "[w]e will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based

---

[23] Diagnostic & Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000) (emphasis added).

on medically acceptable clinical and laboratory diagnostic techniques."[24] "The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden."[25] If the ALJ concluded that Dr. Hachinsky's reports conflicted with one another, he should have contacted Dr. Hachinsky for clarification of his opinion before rejecting it.[26]

Though the ALJ need not formally and exhaustively review each of the *Krauser* factors concerning the medical opinion of a treating physician, the ALJ in this case afforded Dr. Hachinsky's opinion little weight primarily due to a perceived inconsistency that the ALJ should have resolved. Accordingly, the Court remands this matter for the ALJ to seek resolution of the perceived inconsistencies in Dr. Hachinsky's reports, and to more fully consider the evidence in light of the *Krauser* factors articulated by the Tenth Circuit.

**B. The ALJ's Credibility Determination**

Plaintiff alleges that the ALJ's credibility determination is not supported by substantial evidence. At the administrative hearing on September 30, 2010, Plaintiff testified that he experienced debilitating anxiety provoked by situations beyond his control, such as driving and inclement weather, all of which kept him virtually homebound. Plaintiff testified that he traveled to the gym, the grocery store, and to his children's events, but that he often felt the need to arrive late and depart early, and he usually avoided crowds and refused to sit near others.

---

[24] See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1)

[25] *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001)).

[26] *Robinson*, 366 F.3d at 1084.

An ALJ's credibility determinations are generally treated as binding on review.[27] "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[28] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[29] Thus, in reviewing the ALJ's credibility determinations, the Court usually defers to the ALJ on matters involving witness credibility.[30] "Reviewing courts recognize that some claimants exaggerate symptoms for the purposes of obtaining government benefits, and thus deference to the factfinder's assessment of credibility is the general rule."[31] Notwithstanding the deference generally given to an ALJ's credibility determination, however, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[32]

In evaluating a disability claim based on nonexertional symptoms, including pain, the ALJ must first determine whether the objective medical evidence demonstrates that a claimant suffers from an underlying medically determinable physical or mental impairment.[33] If so, the ALJ must consider the relationship between the impairment and the nonexertional limitation

---

[27] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

[28] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

[29] *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir. 2007).

[30] *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *but see Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (stating that "deference is not an absolute rule").

[31] *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[32] Wilson, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

[33] *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987); *Williams v. Bowen*, 844 F.2d 748, 753 (10th Cir. 1988).

alleged.[34] If a loose nexus exists, the ALJ must then consider all the evidence, both objective and subjective, in determining whether a claimant's limitation is disabling.[35] Factors that may be relevant in assessing the claimant's testimony include the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[36]

Here, the administrative decision provides, "[i]n evaluating credibility, an Administrative Law Judge will consider a claimant's work history and activities of daily living, as set out in the regulations."[37] With respect to Plaintiff's work history, the ALJ recognized that before Plaintiff's alleged onset date, he had a consistent work history and reported earnings exceeding the presumptive level for substantial gainful activity, a positive factor for credibility. Nonetheless, the ALJ held that Plaintiff's self-described activities of daily living did not support his alleged disability. Plaintiff claimed that his panic attacks and anxiety made it impossible to drive a motor vehicle to work, and Plaintiff's wife indicated that his anxiety and panic attacks were so severe that he could no longer drive. The ALJ found this testimony inconsistent with the evidence that Plaintiff had a valid driver's license and routinely drove once or twice a day to various destinations. Additionally, the ALJ found that even if Plaintiff was fully credible in

---

[34] *Luna*, 834 F.2d at 164.

[35] *Id.*

[36] *Thomson*, 987 F.2d at 1489.

[37] ALJ Decision, Doc. 9, p. 14.

claiming that he could no longer drive, such an inability to operate a motor vehicle does not preclude employment in positions where motor vehicle operation is not part of the job description.

As it relates to Plaintiff's activities of daily living, it is clear to the Court that the ALJ ignored and failed to consider a substantial amount of the evidence concerning Plaintiff's restrictions. The Court is not persuaded that merely maintaining a valid driver's license negates a claimant's well-supported anxiety regarding driving. While the ALJ correctly noted that Plaintiff drives several times per week, he omitted that Plaintiff's driving is generally limited to destinations within blocks from his home and that Plaintiff would not even travel that far in traffic or inclement weather. The record reflects that Plaintiff missed work on numerous occasions due to his symptoms. Plaintiff's testimony is substantiated by his wife, Kimberly Blazevic, who works as a nurse. Mrs. Blazevic testified that Plaintiff had regular panic attacks that inhibited his daily functions and made it very difficult for him to commute.

While the ALJ need not address every *Luna* factor in making a credibility determination,[38] the ALJ essentially restricted his analysis to Plaintiff's activities of daily living, and failed to fully consider the relevant evidence bearing on that single factor. Accordingly, the Court finds that the credibility determination contained in the ALJ's decision is not sufficiently supported by the record. The Court therefore remands this matter for the ALJ to more fully consider the evidence relevant to the various *Luna* factors.

---

[38] *Nichols v. Comm'r of Soc. Sec. Admin.*, 260 F. Supp. 2d 1057, 1073 (D. Kan. 2003).

## C. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Plaintiff next argues that the ALJ improperly assessed Plaintiff's residual functional capacity ("RFC"). A claimant's RFC is an administrative assessment of the most the claimant can do considering the combined effects of all impairments.[39] The ALJ is responsible for assessing a claimant's residual functional capacity considering all the relevant evidence, including the claimant's description of limitations, the medical evidence, and observations of physicians and others.[40] The ALJ may discredit a claimant's self-reported limitations if they are inconsistent with the evidence in the record.[41]

In this case, the ALJ found that Plaintiff had severe impairments of PTSD, anxiety disorder, and degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion. The ALJ also recognized that Plaintiff was subject to other nonexertional restrictions, including the need to avoid driving, moderate exposure to wetness and humidity, and concentrated exposure to cold. Even with these impairments, however, the ALJ found that Plaintiff retained the capacity to perform unskilled medium work as defined in the regulations.[42] Plaintiff's mental impairments limited him to work classified as unskilled to low-end semi-skilled, having a specific vocational preparation of level three or less.

---

[39] *White v. Barnhart*, 287 F.3d 903, 906 n. 2 (10th Cir. 2001) (holding that "[r]esidual functional capacity consists of those activities that a clamant can still perform on a regular and continuing basis despite his or her physical limitations.")

[40] *See* 20 C.F.R. § 404.1545.

[41] *See Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987).

[42] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. *See* 20 C.F.R. § 404.1567(c). If one can perform medium work, he or she is presumed capable of performing sedentary and light work. *Id.*

Plaintiff asserts that the ALJ's RFC findings are invalidated by deficiencies in his credibility determination and his failure to properly consider the weight due to Dr. Hachinsky's opinion. The Court agrees. Indeed, the RFC assessment is a function-by function- assessment of the Plaintiff's restrictions, and it must be based upon all of the relevant evidence in the record, including the objective medical findings and the credibility of the plaintiff.[43] As set forth above, the Court finds that the ALJ erred in making his credibility determination and in assigning the weight due to Dr. Hachinsky's opinion. Accordingly, remand is necessary for the ALJ to make an RFC assessment following a full review of the medical and other evidence.

**D. The ALJ's Reliance Upon Vocational Expert Testimony**

After the ALJ determined that Plaintiff could not perform his past work as a gambling dealer, gambling monitor, and sales route driver, the burden shifted to the Commissioner to produce evidence of jobs in the national economy that Plaintiff could perform.[44] The ALJ obtained the testimony of an impartial vocational expert to determine whether a significant number of other jobs existed in the national economy that Plaintiff could perform. The ALJ provided a hypothetical to the vocational expert, describing a person with the RFC and restrictions he had assessed. In response to this first hypothetical, the vocational expert testified that such a person could perform unskilled work at the medium level as a sandwich maker, linen room attendant, and copy maker. However, when presented with a second hypothetical, under which the individual could not consistently work an eight-hour day or a forty-hour workweek without significant psychological interruptions, the vocational expert testified that no jobs would be available.

---

[43] *See* Social Security Ruling 96-8p; 20 C.F.R. § 416.929, 416.945 & 404.1545.

[44] 20 C.F.R. § 404.1520.

Plaintiff argues that the ALJ erred in relying upon the testimony of the vocational expert in response to the first hypothetical.  The Court agrees.  Indeed, the vocational expert's testimony critically relied upon the factual predicates concerning Plaintiff's restrictions.  As stated above, the Court finds that the ALJ erred in determining Plaintiff's credibility and assessing Dr. Hachinsky's medical opinion, both of which concern the factual predicates contained in the second hypothetical considered by the vocational expert.  Therefore, the Court remands this matter for the ALJ to reconsider the factual predicates relevant to the vocational expert's testimony after issuing a credibility determination, treating physician assessment, and RFC assessment in light of all relevant evidence.

**IT IS ACCORDINGLY ORDERED** this 24th day of September, 2013, that the judgment of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE